DR VOL 19

COUNTY COURT · COUNTY OF HIDALGO TEXAS

Date: AUG 2 1 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: ______ Deputy Clerk
Pg. 1 of 8

Deed and water contract Louisiana Rio Grande Canal Co. to John T. Beamer conveying 13,682 acres of land out of Porciones 
Los Ebanitos, Santa Ana and Bato Grants 
Hidalgo County, Texas.

21

THE STATE OF TEXAS }
COUNTY OF HIDALGO }

THE STATE OF TEXAS,
COUNTY OF HIDALGO.

KNOW ALL MEN BY THESE PRESENTS: That the Louisiana Rio Grande Canal Company, a private corporation, duly incorporated and existing under and by virtye of the laws of the State of Texas, hereinafter sometimes styled first party, for and in consideration of the sum of Four Hundr8d Three Thousand Eight Hundred Twenty Dollars ($403,820.00) in lawful money of the United States, paid and to be paid to it by John T. Beamer, of the County of Washington, State of Iowa, hereinafter sometimes styled second party, as follows:

The sum of Fifty-five Thousand ($55,000.00) Dollars heretofore in cash paid to first party by second party, the receipt whereof is hereby confessed and acknowledged, and the further sum of Three Hundred Forty-eight Thousand, Eight Hundred Twenty ($348,820.00) Dollars to be paid to first party by second party, as follows: The sum of Twenty Thousand ($200000.00) Dollars to be paid on the 30th day of June, A. D. ,1911; the sum of Twenty Thousand ($20,000.00) Dollars to be paid on the 25th day of each and every succeeding month for twelve (12) consecutive months, beginning July 25th, A. D., 1911, and ending June 25th, A. D., 1912; the sum of One Thousand Three Hundred Twenty ($1320.00) Dollars to be paid July 25th. A. D. 1912, and the sum of Twenty Thousand ($20,000.00) Dollars to be paid on each of the following dates, to-wit: September 25th, A. D., 1912 November 25th, A. D., 1912, January 25th, A. D., 1913, March 25th, A. D. 1913, and the sum of Seven Thousand Five Hundred ($7500.00) Dollars to be paid on May 25th, A. D. 1913.

All of said deferred payments are evidenced by the vendor's lien promissory notes of second party, executed this day payable to first party or order, at its office at Pharr, Hidalgo County, Texas, for the amounts and payable on the dates as aforesaid; all of said notes, which are payable on and before the 25th day of July, A. D., 1912, bear interest from March 1st, 1911, at the rate of six (6%) per centum per annum, payable annually, until maturity, and ten (10%) per centum thereafter until paid; and said five (5) notes payable respectively on September 25th, 1912, November 25th, 1912, January 25th, 1913, March 25th, 1913, and May 25th 1913, to bear interest at the rate of ten (10%) per centum per annum after maturity thereof until paid; all of said nineteen (19) notes provide for ten (10%) per centum attorney's fees on the unpaid pr principal and interest thereof, if placed in the hands of an attorney for collection, or if collected in or through the Probate Court after maturity, and provide that the failure to pay said notes, or any of them, at maturity, shall at the option of any owner and holder thereof, mature all of said notes.

And for and in further consideration of the conveyance heretofore on this day made to First Party by Second party of the land hereinafter described and of all the riparian rights, water rights, all the stock in said Louisiana Rio Grande Canal Company therein and thereby transferred and assigned by Second Party to First Party, as will more fully appear by reference to said deed of conveyance thereto, to which said deed and its record in the Deed Records of Hidalgo County, when recorded, special reference is now here made, and they are each, in all thins, made a part hereof, and upon and for and in consideration of the conditions, covenants, agreements, stipulations, reservations and undertakings herein contained, all to be faithfully, well and truly kept, and performed by the parties hereto respectively, their respective successors, assigns, heirs, legal representatives and all persons whomsoever claiming or holding any right, title, interest, claim, demand or privilege, under said conveyance from second party to first party, or hereunder, and all of which said agreements, covenants, undertakings, etc., are theprime, moving and true considerations of said conveyance from Second Party to First Party;

And for the further consideration of Second Party's releasing and discharging first party from all covenants, agreements, obligations, liabilities and undertakings recited in, under, or growing out of and the cancellation, annulment and avoidance of, the following transactions and instruments, to-wit:

1st; An agreement made by H. N. Pharr, President of the Louisiana-Rio Grande Canal Company, with John T. Beamer, bearing date March 1st, A. D., 1911, and recorded in Book S/B on pages 472 to 477 of the Real Estate Records of Hidalgo County, Texas; here follows other references ...

PLAINTIFF'S EXHIBIT 2
tabbies

2nd: A deed from John T.Beamer to first party bearing date March 1st,A.D.1911,and recorded in Volume 15,pages 271 to 276 of the Deed Records of Hidalgo County,Texas.

3rd. Deed and water contract executed by first party to second party,bearing date March 1st,A.D.1911,recorded in Volume 19,pages 161 to 168 of the Deed Records of Hidalgo County,Texas.

To all of which said instruments and their respective records special reference is now here made and they are each,in all things,made a part hereof for greater certainty; and the acceptance and registration hereof shall be full evidence of such cancellation,annullment and avoid -ance of all of said instruments; Has Granted,Sold and Conveyed,trans- ferred and assigned,and by these presents does Grant,Sell and Convey, Transfer and Assign,unto Second Party,all the following described pro- perty,to wit;

First.

A certain tract of thirty-one thousand six hundred thirty-two (31,632) acres of land in one body,in Hidalgo County,Texas,out of Por- cion Seventy-two (72),Jose Maria Balli,Original Grantee;"Los Torritos" Grant,Maximo Dominguez,Original Grantee;"Santa Ana" Grant,Benigno Leal, Original Grantee and "El Gato" Grant Juan Jose Trevino,Original Grantee

The land hereby conveyed being that acquired by this grantor under and by virtue of four certain deeds,as follows:

1st: Deed from P.E.Blalack and G.L.Hawkins to John T.Beamer of date June 1,1909; recorded in the DeedrRecords of Hidalgo County, Texas in Book "3" on pages 309 to 319 thereof;

2nd: Deed from P.E.Blalack to John T.Beamer,of date June 10th, 1909; recorded in the Deed Records of Hidalgo County,Texas,in Book___ on pages_____to ______thereof.

3rd. Deed from the "West Texas Abstract and Guarantee Company" to John T.Beamer,of date June 23,1909; recorded in the Deed Records of Hidalgo County,Texas,in Book "10" on Pages 5 to 8 thereof;

4th: Deed from Francis X.Ryan to John T.Beamer,dated June 23rd.1909; recorded in the Deed Records of Hidalgo County,Texas,in Book "8" on pages 356 to 360 thereof;

Reference to each and all of said deeds and their respective records being now here made for greater certainty of description of the land hereby conveyed.

COUNTY COURT · COUNTY OF HIDALGO TEXAS

Date: AUG 21 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: [signature]
Deputy Clerk
Pg. 2 of 8

DR VOL 19

COUNTY COURT · COUNTY OF HIDALGO TEXAS

Date: AUG 2 1 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: [signature]
Deputy Clerk
Pg. 3 of 8



It being expressly understood, however, and in all things made a part of the consideration hereof that First Party expressly reserves from this conveyance, and especially retains for its own use, benefit and enjoyment, all of the water rights, riparian rights and all title privileges, uses and easements relating to, connected with, or in any manner affecting or pertaining to the taking, use or enjoyment of water in and from the Rio Grande River whatsoever, which pertain, are incident or appertain to, or in any manner connected with or affect said land hereby conveyed, or any part thereof, or any lands under or covered by First Party's irrigation system as the same is now, or as the same may hereafter be constructed or which the parties hereto, or either of them, their heirs, successors or assigns, as owners of said land or any part thereof, have at any time or in any manner acquired, or may acquire, have or may have, or to which they, or any of them may at any time be in any manner entitled, insofar as the same affects or is connected with said land.

It being the express intention of the parties hereto, and each of them, that First party herein, its successors or assigns, shall have the full domain, use, control, enjoyment, ownership and disposition of all water rights, riparian rights, appropriations, uses, privileges and easements, relating to, connected with, pertaining to, or in any manner affecting the taking, use and enjoyment of water in and from the Rio Grand River whatsoever, which pertain, are incident or appurtenant to, or in any manner connected with, or affect any lands under or covered by First Party's said irrigating system, as the same is now, or as the same is contemplated to be hereafter constructed, so long as First Party, its successors or assigns, shall faithfully keep, carry out, discharge and perform its agreements and undertakings, hereinafter set forth, relative to supplying and furnishing water for irrigation purposes, and operate and maintain all its said canal system for such purposes; and any and all such rights as Second Party has, or may at any time have had or acquired, shall vest in, and hereafter be the property of First Party herein, subject only to the condition and limitation that a permanent failure of said First Party to supply and furnish water to Second Party, ......his...... heirs, successors, assigns and legal representatives, under the terms, conditions and stipulations hereof, or a permanent abandonment by said First Party of the operation and maintenance of its said Canal system, and the consequent failure to keep and perform the covenants, agreements and undertakings by First Party hereby made to so furnish and supply water as aforesaid, shall operate as a forfeiture of its title to said water rights, riparian rights, appropriations, uses, privileges and easements relating to, connected with, pertaining to, or in any manner affecting the taking, use and enjoyment of water in and from the Rio Grande River, as hereinbefore described, and the right and title thereto, insofar as the same affects, is connected with or relates to the land hereby conveyed, shall, thereupon and therewith, revert to and become the property of Second Party, ......his....heirs, successors, assigns or legal representatives, the then owner or owners of said land.

SECOND.

......– 31,632 –..............shares of the capital stock of the said Louisiana-Rio Grande Canal Company, being one share of said stock for each acre of said land hereby conveyed, which said stock is not delivered herewith, but shall be held by First Party subject to, and to secure the faithful performance of, the terms, conditions, covenants, agreements and stipulations of this conveyance and contract until all of said notes this day given First Party by Second Party shall have been fully paid according to the full tenor and effect thereof, when all of said stock shall be by First Party delivered to Second Party, or to such person or persons as Second Party may in writing duly designate; provided, however, the Second Party may, at any time, procure the release and delivery of said stock by making payment upon and for the account of said notes this day given, as hereinafter fully set forth and provided.

It being expressly understood, by and between the parties hereto, and in all things made a part of the consideration hereof, that this conveyance is made by the Grantor and accepted by the Grantee, upon and in all things subject to the following terms, conditions, covenants, agreements, stipulations, reservations, and undertakings, all of which shall be faithfully kept and performed by the parties hereto respectively, their successors, assigns and legal representatives as hereinafter set forth and provided, and all of which shall run with said land hereby conveyed and always be binding upon the parties hereto, and all persons claiming by, through or under them, or either of them, and upon any and all persons whomsoever who may hereafter in any manner own or have any right, title or interest in and to the property hereby conveyed, or any part thereof, or under this instrument, or under any of the terms or provisions hereof, or under the conveyance from Second Party to First Party, as aforesaid, to-wit:

FIRST: First Party, at its own cost and expense, and in such manner as it may determine to be the most practicable, advantageous and economical, shall, in a good and substantial manner, within the time hereinafter provided, construct its irrigation system, including all pumping plants, canals, laterals, flumes, siphons, and other appurtenances and things whatsoever necessary or required therefor, so as to enable it to convey water from the Rio Grande River through and by means of its canals and irrigation system, or otherwise, to the subdivisions of said land hereby conveyed, as hereinafter provided.

SECOND: Unless prevented or delayed by unforseen delays, unavoidable accidents or casualties extraordinary, not involving negligence on its part, First Party shall have its two large pumping plants, the one on the Rio Grande River and the other at the second lift, installed and in operation and its main canal and main lateral, or laterals, through which water will be conveyed to said land hereby conveyed, constructed and be able to put water therein for irrigation purposes, not later than March 1st, A. D., 1911.

THIRD: After the installation of said pumping plants and the construction of such main canals and laterals, as aforesaid, and after having received written notice from Second Party, or.........his.......heirs, successors or assigns, the then owners of such land, which notice shall be delivered to First Party's Manager at and in its general office, that any part or subdivision of said land is ready to receive water for irrigation purposes and that water is desired therefor, First Party shall construct, within a reasonable time thereafter, such additional smaller canals and laterals or other appurtenances or means which may be necessary or required to convey water from its irrigation system to the smaller tracts or subdivisions of said land hereby conveyed, as hereinafter provided. It being expressly understood, however, that First Party shall have ninety (90) days, or so much thereof as to First party may seem reasonably necessary after such notification, within which to construct said additional smaller canals and laterals and other appurtenances and means necessary to convey water to said smaller tracts or subdivisions of said land as aforesaid. It being expressly understood, however, that when such demand is made for water to irrigate any particular tract of said land, for the first time, and the canals, laterals and other appliances and appurtenances of the canal system, as then constructed, are insufficient to supply water thereto, and in the opinion of the Manager of First Party's irrigation system, additional canals, laterals or other appurtenances whatsoever will have to be constructed or supplied before such water can be furnished to such land, the then owner of such land for which water is desired for irrigation purposes shall, upon making such application, deposit with the First Party in cash a sum of money equivalent to One ($1.00) Dollar per acre for each and every acre of such land owned by said person, and which will be supplied with water for irrigation purposes from said proposed canal or lateral, when constructed, and, in no event shall said deposit be less than Forty

COUNTY COURT · COUNTY OF HIDALGO TEXAS
Date: AUG 2 1 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: Deputy Clerk
Pg. 4 of 8



($40.00) Dollars; and until such amount of money is so deposited, First Party shall not be required, or in any manner obligated or bound to construct such additional canal, lateral or appurtenance, or to supply said land with water for irrigation purposes. Said amount of money so deposited shall be applied and credited to the annual water rentals accruing to the First Party, its successors or assigns, for water used on or supplied to said land during the period ending December 31st of the year in which said application for use of water is made; and if no water is so taken, used or supplied and therefore no such water rentals accrue within said period, said amount of money so deposited shall be forfeited to First Party as fixed and liquidated damages.

FOURTH: First Party shall construct its canals or laterals, as aforesaid, to the various sub-divisions, containing not less than forty (40) acres in one continuous body of said land, unless the board of directors of First Party shall order the same constructed to smaller tracts as hereinafter provided, as the same is now or as the same may be hereafter sub-divided, and put such gates, weirs or other appliances in its said canals or laterals, when constructed, as it may determine to be necessary or required for it to properly supply water from its irrigation system to said sub-divisions of said land in the manner and as provided for herein, and as may, from time to time prescribed by First Party in its rules and regulations; provided, however, that there shall be constructed only one lateral to each separate tract of said land containing one hundred sixty (160) acres or less, if the same lies in one continuous body and is owned by the same person, if the same can be properly irrigated by a gravity flow from its canal or lateral when constructed, but in no event shall First Party be required to construct its irrigation system to lands which, from their elevation or otherwise, are impracticable to be irrigated therefrom, as constructed, provided that in the discretion of the board of directors of First Party, its successors or assigns, the canal system may be constructed and extended to subdivisions containing less than forty (40) acres upon such terms and conditions as they may prescribe.

FIFTH: All field laterals and distributing ditches whatsoever for the final distribution of water for agricultural purposes on and over the subdivision of said land, or any part thereof, shall be constructed, maintained and operated by and at the sole cost and expense of Second Party, ......his...heirs, successors or assigns, the owner of said land, but shall be constructed and maintained under the supervision of, and in the manner prescribed by First Party's engineer, but First Party shall not be liable or responsible therefor, or in any manner held for any damage which may accrue by reason of the improper construction or negligent operation thereof, and Second Party......his....heirs, successors or assigns; the then owner of such land shall hold First Party safe and harmless therefrom; provided First Party shall pay its said engineer for his said services in the premises.

SIXTH. First Party shall, after the construction and installation of its said irrigation system, as aforesaid, except under such conditions and circumstances as herein provided, for the consideration herein recited or as hereafter fixed, as provided for herein, and under such rules and regulations as it may, from time to time prescribe, convey water from the Rio Grande River through and by means of said canals and irrigation system, or other wise, and deliver the same, when required as herein provided, to the various subdivisions of said land, as hereinbefore provided, save and except such parts or portions thereof as may, on account of elevation or otherwise, be impracticable to be irrigated from First Party's irrigation system, in sufficient quantities, in connection with the ordinary rainfall, to enable Second Party...his..heirs successors or assigns, at all times to use and cultivate said land for agricultural purposes and to raise crops thereon.

SEVENTH: After the installation and construction of said canal and irrigation system, as hereinbefore provided, Second Party, ........his heirs, successors or assigns shall have the right to receive, demand, be furnished, take and use water therefrom for irrigation purposes, for the consideration and upon the terms and conditions herein or hereafter provided, and under such rules and regulations as First Party, its successors or assigns, may from time to time prescribe. But should Second Party,...............his...heirs, successors or assigns, the owner of said land, fail or refuse to pay, when due, said notes hereinbefore described, the regular water rentals, dues, fixed water charges or other monies whatsoever which may, at any time, be owing to First Party, its successors or assigns by Second Party,......his....heirs, successors or assigns, the owner of said land, or fail or refuse to observe, keep and perform the by-laws, rules and regulations which First Party, its successors or assigns may from time to time prescribe, this right to demand, receive, be furnished, take and use said water may, at the option of the First Party, its successors or assigns, be suspended until such delinquent,...his...heirs, assigns or legal representatives shall fully pay such arrears and, in addition thereto, pay such reasonable penalties as First Party may prescribe for such delinquency, and otherwise fully comply with all provisions hereof, and with such by-laws, rules and regulations and all reasonable requirements as may be prescribed or demanded by First Party, its successors or assigns.

EIGHTH: It is expressly understood and agreed and in all things made a part hereof, that First Party, its successors or assigns, shall not be in any manner liable to Second Party....his heirs, successors or assigns, the owner of said land or to any person whomsoever for any damages whatsoever which may accrue or be sustained by reason of its failure to construct its said irrigation system in the manner and within the time as aforesaid, or to furnish water to said land, or any subdivision or part thereof, as herein provided, or for any of the other things herein contained, if prevented from so doing by any act of God, the breaking down of machinery or appliance, an insufficient available amount of water in the Rio Grande therefor, diversion in and of said river, the breaking of canals or laterals or any unforeseen accident, causalties extraordinary, or from any other cause not involving negligence on the part of First Party.

NINTH: First Party hereby reserves, and expressly excepts from this conveyance, a right of way over, through, across and upon said land hereby conveyed, for its canals, laterals, and irrigation system, as now or as may be hereafter constructed and extended, for all drainage systems and ditches, roadways as shown on the plat of the subdivisions thereof, as may be now or hereafter made, and for all other purposes incidental to, or necessary for the construction, maintenance and operation of its said irrigation system, as the same is now or may be hereafter constructed, and for all pipe lines, electric light, telegraph and telephone poles, lines and systems; for all water, oil, and gas pipes, lines and systems; for all electric, gasoline, or steam railroads or street cars, lines and systems; for all sewerage and drainage ditches, canals and laterals and for all irrigation systems which First Party may at any time construct thereon, or thereover, and for all rights, privileges and franchises connected therewith. Provided that all pipe lines which may be constructed on or over or across said land, shall be constructed and the pipes laid a sufficient depth below the surface of said land so as not to materially interfere with the ordinary use thereof for agricultural purposes.

It being understood, however, that whenever said land, or any part thereof is occupied and taken by First Party, its successors or assigns for irrigation purposes, or for railway purposes, for canals or laterals, that First Party, its successors or assigns shall and will pay the following prices therefor, to-wit:

If the land so taken is then owned by Second Party, First Party shall pay to Second Party the sum of Thirty-Five ($35.00) Dollars per acre for each and every acre thereof, plus an amount, not to exceed Ten ($10.00) Dollars per acre, equivalent to the amount theretofore paid by Second Party to First Party on account of said construction fund, for the land so taken for such rights of way. If said land has been transferred by Second Party, First Party shall pay to the then owner of said land, the price which Second Party sold and actually re-

COUNTY COURT ★ COUNTY OF HIDALGO TEXAS
Date: AUG 21 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: [signature]
Deputy Clerk
Pg. 5 of 8



ceived for said land; and if said land so appropriated and taken is cleared, the then owner shall be paid in addition thereto, the sum of (Ten ($10.00) Dollars per acre for said land so taken and appropriated, and, in addition thereto, shall be paid the reasonable value of all growing crops, improvements, and other property so appropriated and actually destroyed or damaged thereby.

It being understood that if First Party and any then owner of said land are unable to agree upon the value of said growing crops or improvements, or both, on said land when so taken, or the damage thereto, the same shall be submitted to, and decided by, a board of arbitrators to be appointed by the interested parties, as hereinafter provided.

It being further provided that when said land is so taken by First Party, as aforesaid, that upon payment by First Party to Second Party, or the then owner of said land so taken, of the consideration therefor, as hereinbefore provided, Second Party or the then owner of said land so taken shall execute and deliver to First Party a deed or deeds to said land so taken, in the form prescribed by First Party, and shall thereupon and therewith assign, transfer and deliver to First Party one share of the capital stock of First Party so held and owned by Second Party, or the then owner of said land, for each and every acre of said land so taken by First Party and for which said deed or deeds shall be executed.

TENTH: It is understood and agreed and in all things made a part of the consideration hereof, that the ownership of said stock herein sold, assigned and transferred, shall follow the ownership of said land hereby conveyed, one share of said stock for each acre of said land and that the right and title to one share of said stock is incident and appurtenant to, and runs with, and is and shall always be and remain inseparable from the title to each acre of said land, and Second Party, his heirs or assigns, shall not transfer said land, or any part thereof, without at the same time transferring one share of stock with each acre of said land, and shall not transfer said stock without at the same time and together therewith transferring one acre of said land for each share of said stock so transferred, and any attempted sale or transfer of any number of ~~shares of~~ stock without at the same time and therewith transferring an equal number of acres of said land or any sale or transfer of any number of acres of said land without being accompanied with a transfer of an equal number of ~~shares of~~ said stock, shall be inoperative; and any such segregation or attempted seggregation of said stock from said land, by transfer or otherwise, shall operate as a temporary forfeiture of said stock and of all the rights and privileges relative to the taking and use of water accruing hereunder. Any stock so forfeited shall thereupon be cancelled and held by First Party and thereby become inactive and without voting power, until such time as First Party may, for such consideration and under such reasonable terms and conditions as it may prescribe, reissue the same to such landowner, his heirs or assigns, when the rights and privileges hereunder shall revive and be reinstated.

It is further understood and agreed that each stock certificate issued by the First Party to Second Party hereunder, his heirs or assigns, shall designate and describe generally the land upon ~~which~~ and for which it is issued, to which is incident and appurtenant.

ELEVENTH: Second Party,...his.....heirs, successors or assigns, the owner or owners of said land, shall pay First Party for the right and privilege of demanding, taking and using water from First Party's said irrigation system, and for the water used therefrom for irrigation purposes, the following annual water rentals and charges, to-wit:

1st. For each and every acre of said land there shall be paid, whether water is taken or not, a minimum rental or fixed water charge as follows:

~~(a) For the year beginning January 1st, 1911, and ending December 31st, 1911, the sum of Fifty Cents ($.50) per acre.~~

(b) For the year beginning January 1st, 1912, and ending December 31st, 1912, the sum of One ($1.00) Dollar per acre.

(c) For the year beginning January 1st, 1913, aand Ending December 31st, 1913, the sum of Two ($2.00) Dollars per acre.

(d) For each and every subsequent year thereafter, that is, after December 31st, 1913, there shall be paid the sum of Three ($3.00) Dollars per acre per annum. Provided, however, that when such land owner shall take or use water to irrigate said land, or any part thereof, for agricultural purposes, during any year, such land owner shall be given due credit, on his account for water used, for such fixed or minimum water rental paid.

2nd. If such land owner shall use water supplied from First Party's said irrigation system for agricultural purposes, such land owner shall pay therefor the following rates, to-wit:

(a) Four ($4.00) Dollars per acre per annum for each and every acre of said land planted in cotton, corn, or broom corn.

(b) Six ($6.00) Dollars per acre per annum for each and every acre of said land planted in alfalfa, sugar cane, sorghum cane or kaffir corn.

(c) Ten ($10.00) Dollars per acre per annum for each and every acre of said land planted in fruits and vegetables and all other crops not herein specially provided for.

And where there is more than one character or kind of crop on said land at the same time, the maximum rate herein provided shall obtain.

It being expressly understood that the payment of this maximum water charge or rental, to-wit: the sum of Ten ($10.00) Dollars per acre per annum, shall entitle the owner of said land to put in any number or kind of crops on said land during each year.

All of said fixed water charges and annual rentals as hereinbefore provided, shall be paid to First Party at and in its office at Pharr, Hidalgo County, Texas, in lawful money of the United States, in two equal installments, payable respectively on the first day of July and the 31st day of December of each and every year, and when not paid in advance in cash shall be evidenced by note or notes of Second Party,......his............heirs, successors, or assigns, the owner of said land, upon which the same shall accrue, to be given and executed as hereinafter provided.

It being understood, however, that when any such water rentals shall accrue or any notes shall have been given therefor after the 1st day of July of any year, the whole amount of such rental as herein provided shall be payable on or before the 31st day of December next thereafter.

It being further understood and provided, however, that in case the land owner is not a water taker, such land owner shall, nevertheless, execute on the 1st day of January of each and every year, or as soon thereafter as possible, his note or notes for the annual fixed water charge herein provided, of the same character, bearing interest and payable as hereinafter provided for rental notes.

And in the event that any such land owner fails to execute any or all of the notes hereinbefore provided for, then the amounts for which the said land owner is indebted, or shall become indebted, to First Party, for annual fixed water charges or for water rentals, or both, shall, nevertheless, be payable in two equal installments on the 1st day of July and the 31st day of December respectively, of each and every year, and such installment shall bear interest at the rate of 10% per annum from the respective maturities, and in case default is

DR VOL 19

COUNTY COURT COUNTY OF HIDALGO TEXAS

Date: AUG 2 1 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: [signature]
Deputy Clerk
Pg. 6 of 8



made in the payment of same at the maturities thereof, and legal proceedings be instituted to enforce collection thereof, or the account for same should be placed in the hands of an attorney for collection after maturity thereof, or if collected in or through the Probate Courts, such land owner shall pay an additional amount of 10% on the amount then due to First Party as attorney's fees.

TWELFTH: The owner of said land, or any part thereof, shall not waste any water taken or supplied from First Party's said irrigation system, or permit the same to be wasted or to escape onto lands of others after the same has been delivered to the land for which it is intended, and in the event that any such land owner allows any such water to be wasted, or to escape from his, her, its or their land onto lands of others, such land owner shall pay First Party therefor as liquidated damages, the reasonable value thereof as may be fixed by First Party.

THIRTEENTH: The owner of said land, or any part thereof, desiring to use water from First Party's said irrigation system for irrigation purposes, shall annually make written application to First Party therefor, in advance, stating therein the number of acres of said land to be planted in each kind of crop, and stating therein, as nearly as practicable, when water to irrigate same will be desired therefor, and shall, thereupon, pay First Party, in cash, the water rental charged therefor, or shall thereupon execute and deliver to First Party note or notes for the amount of such water rental, in two equal installments, payable on the first day of July and the thirty-first day of December, respectively, next thereafter, to bear interest at the rate of ten per centum per annum from maturity, and to provide for ten per centum as attorney's fees, if said notes should be placed in the hands of an attorney for collection after maturity, or if collected in or through the Probate Courts.

If such land owner shall make the first application any year for water for irrigation purposes, after the first day of July of such year, such land owner shall only be charged therefor one-half of the regular annual water rental, as hereinbefore fixed and provided, unless the crop to be planted by such land owner shall be such as will mature before the thirty-first day of December next succeeding, in which event such land owner shall pay the full annual water rental for such character of crop, as hereinbefore fixed and provided.

Provided, however, that all water rentals accruing after the first day of July of any year, shall be fully paid on or before the 31st day of December next thereafter.

It being in all things understood that for all the purposes of this contract and for date and time, the beginning and ending of fixed water charges and annual water rentals, the term year as herein used, shall always begin on the 1st day of January and end on the 31st day of December of each and every year.

After having made the annual written application, as aforesaid, such land owner shall on each and every occasion when water is desired from First Party's irrigation system for irrigation purposes, make a further written application therefor, by giving a notice in writing and delivering the same to the manager of the Company, First Party, herein, at its office, at least five (5) days before such water is desired to be supplied, and such notice shall state when water is desired for such irrigation, the number of acres desired to be supplied with water at such irrigation, and the character and kind of crop for which water is desired. After receipt of such notice, First Party shall furnish such water within such reasonable period of time as may be necessary to properly irrigate such crop, and under such reasonable rules and regulations as may be now or hereafter prescribed by First Party therefor, in its said rules and regulations.

FOURTEENTH: First Party, by an affirmative vote of a majority of its stock, may, at any time, at its own cost and expense establish a measuring or meter system to measure the water used by each consumer or taken from its irrigation system, and shall thereupon fix, establish and promulgate such rates and charges therefor as it may deem just and reasonable, but such rates so fixed shall be such as will produce for First Party at least the amount of revenue produced by the rates hereinbefore fixed; and provided that such rates so fixed shall be equal and uniform and the same to all persons taking or using water from its said irrigation system.

FIFTEENTH: First party shall conduct its affairs, construct, maintain and operate its said irrigation system, as economically as possible, consistent with good business management and service.

SIXTEENTH: Before declaring or paying any dividends to its stockholders, First Party shall, each year set apart from its net earnings, at least 20% thereof as, for and to be an emergency fund, until such emergency fund shall amount to the sum of Twenty Thousand ($20,000.00) Dollars, which said emergency fund may be used for the purchase and installation of new machinery, completing, extending and repairing canals, laterals and its irrigation system, for replacements of said irrigation system, or any part thereof, and for any other purposes but the regular operating expenses.

Provided, however, that in the discretion of the board of directors of First Party, said emergency fund may not be established or set apart until the First Party's said irrigation system shall have been fully completed, and that until the completion of its said irrigation system the moneys accruing to the First Party from whatever source, may be used therefor.

After said emergency fund shall have been set aside, as aforesaid, the remainder of the net profits may, in the discretion of the board of directors of the First Party, each year be declared and paid as a dividend to the stockholders of said Louisiana-Rio Grande Canal Company, its successors or assigns.

SEVENTEENTH: Should Second Party........his......heirs, successors, assigns or legal representatives, or any person holding or claiming any right, title to said land, or interest therein, at any time have, assert or claim any grievance, claim, demand, suit or damage whatever against First Party arising from or out of the construction, operation and maintenance of its canal and irrigation system, or the failure to furnish water therefrom, or any other cause whatsoever, such Party shall give notice thereof in writing to First Party, within sixty (60) days after the accrual of said alleged complaint or claim or cause of action, grievance or demand, and the First Party shall have thirty (30) days from and after the receipt of said notice within which to investigate and adjust or settle same, and if the parties fail to agree on an adjustment or settlement thereof, within said time, the matter in dispute shall be thereafter by said parties submitted to a board of arbitrators, and determined by arbitration, each party selecting an arbitrator and said arbitrators, in the event of disagreement, shall select a third arbitrator, and the concurrent findings thereon of any two such arbitrators shall constitute such award, and such award shall be reduced to writing and copies thereof furnished to the parties thereto; such award, when so made, shall be binding upon the parties thereto and conclusive of the matters so submitted to said arbitrators, and all expenses of such arbitration shall be paid equally by the parties to such arbitration.

EIGHTEENTH: Second Party,..........his.......heirs, successors of assigns, and all of them, shall, at all times abide by, keep and comply with the reasonable by-laws, rules and regulations of, and as may be from time to time prescribed by First Party, its successors or assigns, relative to the construction, maintenance and operation of said canal and irrigation system, the delivery and use of water, and the payment therefor, and of all other matters connected with its business affairs, insofar as the same are not in conflict with the provisions of this instrument, and all such rules and regulations as the same shall be prescribed, shall become a part hereof, and be in all things as binding upon the parties hereto, their successors, heirs or assigns, as if fully written herein.

NINETEENTH: First Party shall not be required to furnish water to Second Party,..........his....., heirs,

successors or assigns, at any time, and Second Party,......his..heirs, successors or assigns, will not be entitled to take or use water from the First Party's irrigation system, even though having a right thereto, unless at that time the fixed water charges, annual water rentals, interest, penalties, and other moneys whatsoever then due, accruing, or owing to First Party by Second Party, ........his.....heirs, successors or assigns, the then owner of said land, shall have been fully paid, or arranged for satisfactorily to First Party, its successors or assigns, and unless the field laterals and distributing ditches, levees, conduits, flumes or other appurtenances necessary for the proper distribution of water on the lands desired to be irrigated are of such size and in proper condition to receive the water and prevent its waste, and reasonably free and clean from weeds and all aquatic growth; and unless the borders around such field or land are in good condition so as to prevent water from escaping from said field or land onto the lands or fields of others, or onto public roads; and unless the land is reasonably level so that the water will flow regularly and not accumulate thereon.

TWENTIETH: Should the Second Party herein desire to sell any part, portion or subdivision of the tract of land herein conveyed, before the full and final release of such part or portion or subdivision of said land so desired to be sold, and the surrender and delivery of the proportionate shares of stock, before such full and final payment of said notes hereinbefore described, First Party shall release to Second Party herein such parts, portions or subdivisions of said land so desired to be released from indebtedness evidenced by said notes, as fully described herein upon the payment of said First Party by the Second Party herein of the sum of Ten ($10.00) Dollars per acre for the part, portion or subdivision so desired to be sold and released, and cause to be delivered to Second Party one share of the capital stock of said First Party for each acre of said land so released, and such payment when so made shall be by First Party credited on the aforesaid indebtedness of the said Second Party, evidenced by said above described notes to said First party remaining unpaid, in order of the maturity of said notes, and when all of said notes are fully paid, First Party shall execute a release of the vendor's lein herein retained to secured the payment of the same, and shall also surrender and deliver to Second Party, ...his...heirs, successors or assigns, the shares of stock held by First Party as herein provided.

TWENTY-FIRST: Should Second Party herein, or any owner of said land, or any part thereof, at any time, sell or convey any part or portion of the lands herein conveyed, Second Party and any such land owner shall include and incorporate in all the conveyances to the purchasers thereof, expressly or by reference hereto, all the conditions, terms, stipulations and covenants in this deed contained, and all such deeds and conveyances so made by such land owners shall be made and executed subject in all things to all of the terms, conditions, stipulations, agreements and reservations herein contained.

TWENTY-SECOND: The conditions and terms of this instrument are appurtenant to the land herein described, and shall run with and bind said land, and all conditions and agreements to be performed by the parties hereto, respectively, shall bind the successors, heirs, assigns and legal representatives of the parties hereto.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Second Party,........his........heirs, successors or assigns or legal representatives forever, subject to the above agreements, terms, conditions, stipulations and covenants; and First Party does hereby bind itself, its successors and assigns, to warrant and forever defend all and singular the said premises unto the said Second Party ..........his......,heirs, successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, through or under it and no further.

It is expressly understood and agreed that the vendor's lien is herein and hereby expressly retained and reserved upon all the above described land, premises and shares of stock hereby transferred and conveyed, to secure the payment of the said vendor's lien notes hereinbefore described and all interest and attorney's fees which may accrue thereon, according to the tenor and effect thereof, and also to secure the payment of the fixed water charges and annual water rentals and all notes given therefor and for all interest and attorneys' fees which may accrue thereon and for all monies whatsoever which may hereafter become due by the owner or owners of said land and for the performance and keeping of all covenants, agreements, conditions and stipulations which are herein made to run with the land and said lien shall continue in full force and effect indefinitely to secure the faithful performance of all such agreements, covenants, stipulations, etc.

It is contemplated that said land hereinbefore described and upon which a vendor's lien is hereby and herein retained and reserved, may become owned and held in smaller tracts or subdivision, the ownership of which may be vested in different persons, and that the owner of one part or portion thereof may have no right, title or interest in, or any control over, or anything whatever to do with the other parts or portions thereof; it is, therefore, understood and agreed that the lands of one such respective several owner, or owners, shall not be held, liable, bound or responsible and the vendor's lien here retained shall not be enforceable against the same, for the indebtedness, obligations, liabilities, defaults or delinquencies, accruing or arising hereunder, of the owner or owners of any other part or portion of said land; provided, however, that each and every separate tract or part of said land shall be responsible, liable, held and bound, and said lien enforceable thereupon, for all the liabilities obligations, agreements and undertakings herein provided, of the mediate and immediate vendors of such land back to and including Second Party herein, and the vendor's lien herein retained and the covenants, agreements, etc., hereof, shall follow and apply to each and every separate ownership of said land.

It being understood, however, that the retention of the vendor's lien herein to secure the water charges and water rentals as herein provided, is retained and held by First Party as additional security to the statutory lien on crops supplied and irrigated with water from its canal system, and that the retention of such security shall in no wise affect or impair its lien on said crops as afforded by the statutes of the State of Texas for such purposes.

It is further specially understood that should First Party permanently abadon this contract, or permanently fail to supply water for irrigation purposes after proper application therefor as herein provided, that the Second Party,........his.......heirs, successors or assigns, the then owner of said land, may sue First Party for damages for breach hereof, for the enforcement of the specific performance hereof or for the forfeiture hereof, at the election of said party.

COUNTY COURT ★ COUNTY OF HIDALGO TEXAS

Date: AUG 21 2026
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: [signature]
Deputy Clerk
Pg. 7 of 8

DR VOL 19

(Karnes-got hin jurisdiction)

It is further agreed that if by reason of any law, order or requirement of the United States Government, now in existence or hereafter made the right to use water from the Rio Grande River for irrigating any or all of those parts of porciones 63,64,65,66,67,68,69,70,71,72 and Los Torritos, Santa Anna and El Gato Grants, in Hidalgo County, Texas, under the canal system of the Louisiana-Rio Grande Canal Company, or having a contractual right with said Company to water therefrom, shall be in any manner limited or restricted, then in such case, the right of the respectively owners of such lands to such waters and the obligation of first party to furnish the same, shall be determined accor-g to the rights of such lands to water from the Rio Grande River, the status of said lands relative to such ri... ...rch 1st, 1911. ...ressly understood that this conv- ...e with a certain agreeme- ...and second partier ...the record the ...ich is in

208

THE STATE OF TEXAS, }
COUNTY OF HIDALGO. }

Before me, the undersigned authority, a Notary Public duly commissioned and qualified in and for Hidalgo County, Texas, on this day personally appeared W. N. Chase, known to me to be the person whose name is subscribed to the foregoing instrument as ........ President of the Louisiana-Rio Grande Canal Company, and acknowledged to me that he executed the same for the purposes and the consideration therein expressed, and in the capacity therein stated, and as the act and deed of said Louisiana-Rio Grande Canal Company.

Given under my hand and seal of office, this the 7th day of June, A. D., 1911.

W. L. Sims
Notary Public in and for Hidalgo County, Texas.

Filed for Record in the office of the County Clerk of Hidalgo County, Texas, at 4 1/2 o.m. o'clock, this 12th day of June A. D. 1911.

A. E. Chavez
County Clerk Hidalgo County, Texas.

Recorded this the 19th day of June A. D. 1911 at 8 40 o'clock A. M. A E Chavez County Clerk

AUG 21 2026
Date:
I, Arturo Guajardo, Jr. County Clerk do hereby certify that this is a true and correct copy of the original document filed in my office
By: [signature]
Deputy Clerk
Pg. 8 of 8
COUNTY COURT COUNTY OF HIDALGO TEXAS